Matter of Wimbledon Fin. Master Fund, Ltd. v Bergstein (2018 NY Slip Op 07943)





Matter of Wimbledon Fin. Master Fund, Ltd. v Bergstein


2018 NY Slip Op 07943


Decided on November 20, 2018


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 20, 2018

Renwick, J.P., Richter, Tom, Kern, Oing, JJ.


150584/16 7656 7655

[*1]In re Wimbledon Financing Master Fund, Ltd., Petitioner-Respondent,
v
David Bergstein, et al., Respondents-Appellants, Weston Capital Asset Management, LLC, et al., Respondents.


Satterlee Stephens LLP, New York (Andrew L. Fish of counsel), for David Bergstein, Graybox, LLC and Iskra Enterprises LLC, appellants.
Winget, Spadafora & Schwartzberg, LLP, New York (Garry T. Stevens, Jr. of counsel), for K Jam Media, Inc., appellant.
The Law Offices of Nathaniel Z. Marmur, PLLC, New York (Nathaniel Z. Marmur of counsel), for Henry N. Jannol, appellant.
Kaplan Rice LLP, New York (Joseph A. Matteo of counsel), for respondent.



Judgment, Supreme Court, New York County (Shirley Werner Kornreich, J.), entered July 21, 2017, to the extent appealed from, awarding petitioner sums of money as against respondents David Bergstein, Graybox LLC, K. Jam Media, Inc. and Henry N. Jannol, unanimously affirmed, with costs. Appeal from order, same court and Justice, entered on or about July 18, 2017, which granted petitioner's motions for summary judgment on its turnover petition and to dismiss respondents' cross petition for an accounting, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.
Petitioner, as assignee of a judgment entered in 2013 against nonparty Arius Libra, Inc., brought this proceeding pursuant to CPLR article 52 for a turnover order to recover assets that had been fraudulently conveyed away from Arius Libra (see Debtor and Creditor Law §§ 272, 273).
Because the conveyances at issue were made to third parties without benefit to petitioner's assignor, they were made without adequate consideration (Geltzer v D'Antona [In re Cassandra Group], 312 BR 491, 497 [Bankr SD NY 2004]). Moreover, because the conveyances were made to insiders of the debtor, they were presumptively made in bad faith (Matter of CIT Group/Commercial Servs., Inc. v 160-09 Jamaica Ave. Ltd. Partnership, 25 AD3d 301, 303 [1st Dept 2006]). Respondents failed to meet their burden of rebutting the presumption of the debtor's insolvency arising from the lack of adequate consideration (see Battlefield Freedom Wash, LLC v Song Yan Zhuo, 148 AD3d 969, 971 [2d Dept 2017]). The debtor's principal assets were concededly illiquid hedge fund interests, not "saleable" assets, i.e., assets for which there
was an actual market (see McCarthy v Estate of McCarthy, 145 F Supp 3d 278, 286 [SD NY 2015]; Chase Natl. Bank v United States Trust Co., 236 App Div 500, 503 [1st Dept 1932], affd 262 NY 557 [1933]).
The motion court correctly determined that the conveyances were made with fraudulent [*2]intent (see Debtor and Creditor Law § 276). Two of the principal actors pleaded guilty to criminal fraud in connection with these transactions. The third was convicted after the judgment on appeal was entered. In any event, more than enough "badges of fraud" exist to support the court's determination (see Wall St. Assoc. v Brodsky, 257 AD2d 526, 529 [1st Dept 1999]). These include "a close relationship between the parties to the alleged fraudulent transaction, a questionable transfer not in the usual course of business, inadequacy of the consideration, the transferor's knowledge of the creditor's claim and the inability to pay it, and retention of control of the property by the transferor after the conveyance" (id.).
Contrary to respondents' contention, the judgment creditor did not ratify the transactions. While its own investment advisors were part of the fraudulent scheme, the advisors disbursed funds through the creditor's own accounts, and the
creditor received no benefit (see Matter of New York State Med. Transporters Assn. v Perales, 77 NY2d 126, 131 [1990]). In any event, the malefactors could not ratify their own bad acts (see Kelly v Handy & Harman, 2010 WL 2305743, *13, 2010 US Dist LEXIS 61567, *34 [SD NY 2010], affd 406 Fed Appx 538 [2d Cir 2011]).
The motion court correctly found that, under Delaware law, Bergstein was the alter ego of the debtor (see Crosse v BCBSD, Inc., 836 A2d 492, 497 [Del 2003]). Bergstein's sole argument is that the other members of the scheme controlled the debtor. However, he was the initiator of the scheme and the creator and chairman of the debtor. Moreover, while other conspirators had to approve the loan proceeds disbursements — more than 12 borrowing requests and 27 transfers initiated by Bergstein — the other participants did exactly as he directed.
We decline to remand for discovery as to any payments received by petitioner from the remaining assets of the debtor in its possession. Respondents can seek this information in the supplementary discovery process, when and if their assets are found.
Respondent Jannol's argument that the court does not have personal jurisdiction of him is barred by the doctrine of law of
the case, this Court having rejected it on a prior appeal (Matter of Brodsky v New York City Campaign Fin. Bd., 107 AD3d 544, 545—546 [1st Dept 2013]; see Wimbledon Fin. Master Fund, Ltd. v Bergstein, 147 AD3d 644 [1st Dept 2017]).
The court correctly held Jannol personally liable although the funds were transferred into his client escrow account. Jannol completely controlled the funds that went in and out of the account, and thus is personally liable for his own tortious conduct, regardless of the fact that the account was in the name of his professional corporation (see T & R Foods, Inc. v Rose, 47 Cal App 4th Supp 1, 9 [Cal App 1996]).
Jannol fails to raise a factual issue as to his defense that he was merely a conduit of funds. Although no discovery occurred, the factual circumstances of his acceptance of the funds, which he fails to provide in his affidavit in opposition to the motion for summary judgment, are within his personal knowledge.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: NOVEMBER 20, 2018
DEPUTY CLERK